McKinney, J,,
delivered tbe opinion of the Court.
Tb¿s was an action of ejectment, brought by Alley against Carroll, in the Circuit Court of Marion. The jury, under the instructions of the Court, found a verdict for the defendant, and the plaintiff has brought the case to.this Court by an appeal in error. Both parties set up title to the premises described in the declaration. The plaintiff claims title under a purchase at execution sale. The title of the defendant is founded upon a subsequent sale of the same tract of land, under a decree of this Court.
The case, as presented in this record, turns upon the validity of the plaintiff’s title, and to that we will confine our investigation.
The facts are these.: On the 10th of July, 1839, Archibald White recovered against Thompson Garden-hire and John Holloway, by a decree of the Supreme Court, $1097.00, exclusive of costs. Upon this decree, a writ of fieri facias issued on the 20th of July 1839. This writ is not directed to the Sheriff of any particular county — the direction being “ To the Sheriff of - county.” In point of fact, however, it was placed in the hands of a deputy Sheriff of Marion county, .in which county the land in controversy is situated: though the fact, that the land is situate in Marion county, or the fact, that the person in whose hands the process was placed, was an officer of Marion county, nowhere appears upon the fii. fa. Upon said writ the following levy is endorsed:
“ No personal property to be4 found in my county. Levied on 160 acres of land of Thompson Gardenhire, *112 including the place where he now lives, adjoining the fraction of land where John Watson now lives, and also the fraction of land where Edward Holloway now lives, in the Ocoee District, on the south side of Tennessee river. The numbers of said land not known. December 30th, 1839.
“J. J. GRIFFITH, D. SJlfi.”
This execution, with the foregoing levy endorsed on the back thereof, was returned to the office of the Supreme Court. No further step was taken to enforce satisfaction of the before-mentioned decree, until the 10th of March, 1843, when an alias writ of fieri facias was issued, directed to, and placed in the hands of the Sheriff of Marion county: on the back of which writ the Clerk copied the levy endorsed on the original fi. fa. No levy was made by virtue of this alias execution. On the 9th of September, 1843, a pluries writ of fieri facias issued upon said decree, upon which was also copied, by the Clerk, the levy on the original execution. This latter execution does not appear to have been placed in the hands of the Sheriff.
On the 16th of February, 1844, a writ of venditi-oni exponas issued, purporting to be founded upon the levy made under the original execution, on the 30th of December, 1839, and commanding the Sheriff to expose the lands, so levied on, to sale, in satisfaction of said decree. On this writ the Sheriff made the following return:
“After giving legal notice, I proceeded to sell the within described land, and Erasmus Alley being the *113 highest and best bidder, at one thousand and two dollars. This 1st day of June, 1844.
“James Rankin,

“Sheriff of Marion county

On the 8th of June, 1846, the Sheriff executed a «deed of conveyance for said lands to Alley, the purchaser. And upon the supposed title, thus acquired he relies for a recovery in the present action.
, Upon the foregoing facts, we are of opinion that the plaintiff acquired no title under his purchase..
Whether or not the first writ of fieri facias — not being directed to the Sheriff of Marion county— communicated to him any authority to make the levy) and whether or not the levy itself is not void, for want of a sufficient description of the lands, are questions worthy of serious consideration, if their determination was necessary to the decision of the present case. But we deem it unnecessary to express an opinion upon these points, inasmuch as if these objections were out of the way, the sale must be held utterly inoperative and void upon another ground, and that is, that the levy under the first writ of fieri facias, made on the 30th of December, 1839, and upon which the venditioni exponas was founded, was voluntarily abandoned. The plaintiff in the execution might have pursued the levy by suing out a writ of venditioni exponas; or, without doing so, it was allowable to sue out an alias execution, and by virtue thereof cause a re-levy to be made upon the same lands— no other right intervening. But it is clear, we think, that the election to adopt the latter course would *114 necessarily amount to a voluntary abandonment of the firsft levy. And being thus once abandoned, no effect could afterwards be given to it, under any circumstances. The issuance of the alias and pluries writs of fieri facias — no new levy having been made under either — can have no effect whatever' upon the case, except to furnish conclusive evidence of the intention to abandon the levy under the first writ. Neither can any effect be predicated of the act of the Clerk,, in endorsing the levy under the first writ on the subsequent executions. This act was unauthorized, and was simply a nullity. It follows, therefore, that the issuance- of the venditioni exponas was wholly without authority, there being no existing previous levy to-which it could be referred, or upon which it could be grounded; and, consequently, the sale was a mere nullity.
In this view, it does not become necessary tn inquire whether or not the defendant acquired any title under his subsequent purchase.
The cases referred to by the counsel for the plaintiff in error, establish no principle upon which the title of the plaintiff can be supported.
There is no error in the record, and the judgment will be affirmed.